214 N.J. Super. 68 (1986)
518 A.2d 496
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOE N. JONES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 1986.
Decided November 21, 1986.
*70 Before Judges PRESSLER, GAULKIN and ASHBEY.
Kenneth G. Goodman, Assistant Deputy Public Defender, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney, Kenneth G. Goodman, of counsel and on the brief).
Catherine A. Foddai, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney, Catherine A. Foddai, of counsel and on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Following a trial by jury, defendant Joe N. Jones was convicted of a charge of unlawful possession of a handgun without a permit in violation of N.J.S.A. 2C:39-5(b), a third degree crime, and a charge of aggravated assault in violation of N.J.S.A. 2C:12-1(b)(3), a fourth degree crime which is subject to a mandatory parole ineligibility period under N.J.S.A. 2C:43-6(c), the so-called Graves Act. Accordingly, he was sentenced on the fourth degree crime to an 18-month prison term to be served without parole and, on the third degree crime, to a concurrent one-year probationary term.
The charges against defendant arose out of a confrontation between him and a coemployee, Kelvin Cameron, which took place at an office building in Newark. Defendant was the shift supervisor of the private security guards assigned to that building, and Cameron was one of the guards who was just *71 finishing what had turned out to be a 24-hour shift. Defendant customarily carried a gun in a holster on his person while working, although he never had obtained a permit to do so. The dispute between the two apparently had its genesis in Cameron's inquiries of defendant regarding the arrival of Cameron's relief. The relief apparently finally arrived, and Cameron prepared to leave the building. It was at this point that the two fought and defendant shot Cameron, but not fatally. Each claimed that the other was the aggressor. Defendant's position from the outset was that he was attempting to defend himself from Cameron's attack and had tried to fire a warning shot into the air; it had never been his intention to actually shoot Cameron.
Defendant was charged in a three-count indictment with the third degree weapons offense of which he was convicted, with the second degree crime of aggravated assault in violation of N.J.S.A. 2C:12-1(b)(1), and with the second degree crime of carrying a handgun with the intent to use it unlawfully in violation of N.J.S.A. 2C:39-4(a). The trial commenced on the morning of December 12, 1983. The jury was charged on the morning of December 14 and began its deliberation shortly before 10:00 a.m. The only issues then submitted to the jury were the three crimes as charged in the indictment. No lesser-included offenses were charged. Once during the morning and once after the lunch break, the jury asked for further instructions on various aspects of the charge and unexceptionable clarifications were given. By 4:00 p.m. the jury had not yet reached a verdict on any of the charges and it was released for the day, resuming deliberations the next morning at 9:00 a.m. An hour and a half later, the jury reported that it had reached a verdict on the third degree weapons charge but was deadlocked on the two second degree charges. The trial judge called the jury into the courtroom, took the guilty verdict on the third degree weapons charge, and instructed it to continue to attempt to reach unanimity on the other two charges. A short time later, in response to another question from the jury, the judge *72 gave supplemental instructions on the elements of aggravated assault and, particularly, on the meaning of bodily injury which rises to the level of "serious" within the statutory definition. During the course of this supplemental instruction, given after more than seven hours of deliberation, the judge, sua sponte, for the first time charged the jury that it could find defendant guilty of the lesser-included offense of recklessly causing bodily injury to another with a deadly weapon. This is the fourth degree aggravated assault as defined by N.J.S.A. 2C:12-1(b)(3). About half an hour after being given this alternative, the jury reported its unanimity on that aggravated assault charge and returned a guilty verdict on the fourth degree crime. Since the jury remained deadlocked on the second degree weapons offense, the judge then declared a mistrial as to that charge.
The primary thrust of this appeal is defendant's challenge to his conviction of the fourth degree crime of aggravated assault. He argues both that it is not a lesser-included charge of the second degree aggravated assault with which he was charged and that, in any event, the first submission of this alternative to the jury some seven hours after it had commenced deliberations and had already announced its deadlock on the crime as charged deprived him of his right to a fair trial. We agree with both of these contentions and, therefore, reverse the conviction of the fourth degree aggravated assault.
We began our analysis of the lesser-included offense issue by comparing the statutory definitions of three separate aggravated assault crimes. A person is guilty of a second degree aggravated assault under N.J.S.A. 2C:12-1(b)(1) if he
[a]ttempts to cause serious bodily injury to another, or causes such injury purposely or knowingly, or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury....
He is guilty of a third degree aggravated assault under N.J.S.A. 2C:12-1(b)(2) if he
[a]ttempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon....
*73 And he is guilty of a fourth degree aggravated assault under N.J.S.A. 2C:12-1(b)(3) if he
[r]ecklessly causes bodily injury to another with a deadly weapon....
Thus, the gravamen of the (b)(1) crime is the seriousness, as defined by N.J.S.A. 2C:11-1(b), of the bodily injury actually inflicted or attempted to be inflicted. The bodily injury component of both the (b)(2) and the (b)(3) is satisfied by the lesser degree of bodily injury as defined by N.J.S.A. 2C:11-1(b). Thus, the bodily injury component of the (b)(1) crime obviously encompasses the bodily injury component of the (b)(2) and the (b)(3) crimes. If that, however, were the only component of the (b)(2) and the (b)(3) crimes, they would not be aggravated assaults but rather simple assaults as defined by N.J.S.A. 2C:12-1(a)(1). What makes the (b)(2) and (b)(3) crimes aggravated assaults is the second element, namely, that the bodily injury was inflicted or attempted to be inflicted with a deadly weapon. This element of a deadly weapon is not an element of the (b)(1) crime.
The question then is whether this added element of the (b)(2) and (b)(3) crimes precludes their categorical encompass by the (b)(1) crime. We conclude that the code itself compels an affirmative answer. N.J.S.A. 2C:1-8(d) defines a lesser-included offense as one which meets one of the following conditions:
(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
(2) It consists of an attempt or conspiracy to commit the offense charged or to commit an offense otherwise included therein; or
(3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.
Clearly, because a deadly weapon is an element of the (b)(2) and (b)(3) crimes but not of the (b)(1) crime, none of these conditions can be here met. We thus agree with the reasoning and endorse the conclusion of Judge Villanueva, who held in State v. Mincey, 202 N.J. Super. 548 (Law Div. 1985), based on the same analysis, that the (b)(2) crime is not a lesser-included offense of the (b)(1) crime. We disagree with an earlier Law *74 Division opinion, State v. Berrios, 186 N.J. Super. 198 (Law Div. 1982), which held this fatal lack of congruence curable if the indictment notices defendant, albeit not in the (b)(1) count itself, that he is being charged with the criminal consequences of possessing a deadly weapon. Nor do we find apposite State v. LeFurge, 101 N.J. 404 (1986), which dealt with notice problems implicated by N.J.S.A. 2C:1-8(d)(2).
We further conclude that irrespective of the lesser-included status of the (b)(3) crime, the trial judge erred by instructing the jury to consider it under the circumstances here. While we recognize that the trial judge has considerable latitude in giving supplemental instructions to the jury, it is nevertheless clear that he may not do so in a manner calculated to induce an undecided jury to convict. Compare State v. Czachor, 82 N.J. 392 (1980). We have no doubt that in circumstances such as those present here, the offer to a deadlocked jury of a lesser-included charge on which it could convict has so clear a propensity to produce a compromise guilty verdict as to require its interdiction. While the courts of this State have not addressed this issue in a reported opinion, those states which have considered it have uniformly concluded that charging a deadlocked or apparently deadlocked jury with a theretofore uncharged lesser-included offense is unduly and unfairly coercive. We are in full agreement with this cogent observation made by the California Supreme Court over 80 years ago:
There is no doubt of the general rule that after a jury have retired for consultation they may be called into court for further instructions; but we think that it was erroneous and unfair to defendant to give the last instruction as to the attempt, at the time and under the circumstances at and under which it was given. The jury had been out for a very long time without being able to agree under the instructions which had been given them, and which had been on subsequent occasions repeatedly reiterated, and many of the jurors had practically told the court what their opinions were, and that if the instructions were changed so as to meet their views they could find a verdict of guilty, contrary to the former instructions. The project of instructing the jury for the first time, after they had been unable to agree for 24 hours, that they might, notwithstanding the former instructions, convict the defendant of the attempt, was clearly an afterthought suggested by the statements of the jurors as to how they then stood, and apparently intended to help them, not generally to *75 arrive at a verdict, but to arrive at some sort of a verdict of guilty. Such a proceeding is, we think, a most dangerous interference with the right of a defendant to a fair trial. We do not know what occurred in the jury room. Some of the jurors may have believed the evidence too slight to convict the defendant of any offense, and, for the purpose of argument, may have admitted that he might have been convicted of the attempt if the former instructions had allowed it, and after the last instruction had been given may have been embarrassed by their former admissions. Moreover, the jury might very well have considered the last instruction as an intimation of the desire of the court that the defendant be convicted of some offense. Jurors exhausted by a long confinement, and naturally desirous of being released, are not in a suitable frame of mind to thoroughly consider an entirely new phase of the case under a new instruction which might fairly be construed as an expression of the court hostile to the defendant. [People v. Stouter, 142 Cal. 146, 75 P. 780, 781 (1904)]
See also People v. Jennings, 22 Cal. App.3d 945, 99 Cal. Rptr. 739 (1972); State v. Anderson, 117 W. Va. 265, 185 S.E. 212 (1936); Rush v. State, 239 Ark. 878, 395 S.W.2d 3 (1965); State v. Amos, 553 S.W.2d 700 (1977).
While the fourth degree aggravated assault conviction requires reversal under each of the foregoing grounds, we are satisfied that it is only the first of these, namely, our conclusion that it is not a lesser-included crime of the (b)(1) offense, which requires the consequent conclusion that defendant cannot now be indicted and retried for the (b)(3) offense. That consequence, we are satisfied, is compelled by State v. Gregory, 66 N.J. 510 (1975). See also R. 3:15-1(b).
Defendant also challenges his convictions on the following grounds:
(1) the jury instruction on unlawful possession of a handgun violated defendant's rights to a fair trial and trial by jury (N.J. Const. (1947), Art. I, Par. 10; U.S. Const., Amend. VI, XIV) (not raised below);
(2) the judge's failure to give a jury instruction on self-defense deprived defendant of a fair trial (N.J. Const. (1947), Art. I, Par. 10; U.S. Const., Amend. VI, XIV) (not raised below);
(3) the trial judge assumed an adversarial position toward defendant throughout the trial and thus deprived defendant of his right to a fair trial (N.J. Const. (1947), Art. I, Par. 10; U.S. Const., Amend. VI, XIV) (partially raised below); and
(4) the sentencing court's failure to state the reasons for the imposition of a $500 penalty on Count I requires that the penalty be vacated and the case be remanded for resentencing (not raised below).
*76 We have considered each of these contentions in the light of the record and the argument of counsel thereon, and we are satisfied that each is clearly without merit. R. 2:11-3(e)(2).
Defendant's conviction of fourth degree aggravated assault is reversed. His conviction of carrying a firearm without a permit is affirmed. We remand to the trial court for correction of the judgment of conviction in accordance with this opinion and for such resentencing as may be required. See State v. Rodriguez, 97 N.J. 263 (1984).