### State of Vermont v. Benny E. Curtis

[603 A2d 356]

No. 89-621

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed December 20, 1991

*Gary S. Kessler*, Supervising Appellate Prosecutor, and *Baldwin Chin*, Intern (On the Brief), Montpelier, for Plaintiff-Appellee.

*Gary J. Karpin*, Newport, for Defendant-Appellant.

**Morse, J.** Defendant shot a deer decoy and was convicted of attempting to take a wild deer out of season under 10 V.S.A. § 4745. His principal argument on appeal is that the defense of legal impossibility precludes a conviction under this statute and under Vermont's attempt statute, 13 V.S.A. § 9. He also contends that the trial court erred in refusing to instruct on the issue of entrapment and that he should be acquitted because the use of a deer decoy violated certain Fish and Wildlife Department guidelines. We affirm.

At approximately nine o'clock on the night of November 18, 1988, two state game wardens placed a deer decoy in a field adjacent to Town Road 23 in Greensboro, Vermont. Complaints by local residents prompted the measure in an effort to detect the illegal taking of deer. The wardens constructed the decoy using styrofoam and wood, a deer hide covering, and a mounted deer head. They designed the body of the decoy to closely resemble the physique and proportions of a deer, covering its glass eyes with reflective tape to simulate the appearance of a live deer's eyes. The decoy was placed eighty-three feet from the road.

Positioning themselves so that they could observe the area undetected, the wardens saw defendant's pickup truck proceeding slowly along the town road. They watched as the truck stopped and saw a "very bright" light shine from the passenger window for approximately thirty seconds, aimed directly at the

decoy. After the light went out, the wardens continued to watch as the truck again began moving slowly down the road. It stopped once more, and the light reappeared, again aimed at the decoy. The wardens saw the silhouette of a rifle emerge from the driver's window and heard a gun shot almost immediately thereafter. The wardens converged on the truck, identifying defendant as the operator of the truck and seizing a .22 caliber rifle, ammunition and lighting devices, the strongest of which was attached to a miner's cap, worn by defendant. An expended .22 caliber casing was found on the ground nearby. Upon examination of the decoy, the wardens determined that one eye had been shattered by a gun shot.

## I.

We must decide whether it makes a difference that defendant shot a decoy, a fact beyond his knowledge, rather than a live deer. Defendant argues that it does, claiming the defense of legal impossibility requires a reversal. We have not had occasion to rule on this issue.

A person is prohibited from taking "a wild deer except specified wild deer during the seasons provided by law." 10 V.S.A. § 4745. A person is guilty of attempting a crime by doing "an act toward [its] commission . . . but by reason of being interrupted or prevented fails in the execution of the same." 13 V.S.A. § 9. We have held that an "attempt consists not only of an intent to commit a particular crime, but . . . some overt act designed to carry out such intent." *State v. Hudon*, 103 Vt. 17, 20, 151 A. 562, 564 (1930); see also *State v. Boutin*, 133 Vt. 531, 533, 346 A.2d 531, 532 (1975) (a criminal attempt "must be of such a character as to advance the conduct of the actor beyond the sphere of mere intent. . . . [and] must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation"). Undoubtedly, defendant's behavior demonstrated an intent to take a wild deer out of season. He performed an overt act toward the commission of the intended crime. His conduct went as far as it could in achieving the goal of taking a wild deer out of season. Except for the fact that the "wild deer" in his sights was not real, he would be guilty of the crime prohibited by § 4745.

■ The doctrine of legal impossibility has been defined as a "situation in which the defendant did everything he intended to do but yet had not committed the completed crime." 2 W. LaFave & A. Scott, Substantive Criminal Law § 6.3, at 38 (1986). This is a semantic defense which would make defendant guilty of no crime, even if he thought he was taking a live, wild deer. Defendant's rationale is that the decoy was not subject to hunting regulations; it could not be killed, tagged and weighed for identification. See 10 V.S.A. App. §§ 2, 2a. Therefore, the Legislature simply did not make it illegal to take deer decoys, and attempting to do what is not illegal is not a crime.

Nevertheless, we read part of the statutory definition of attempt, "but by reason of being . . . prevented fails in the execution of the [crime]," as covering the facts in this case. Defendant was "prevented" from shooting a wild deer because he was tricked into shooting a decoy. We see no meaningful distinction between the infeasible act of putting a bullet-proof protection on a live deer to prevent its demise and the use of a decoy to divert a hunter's attention from a live deer. Either way, live deer are given a measure of protection.

Defendant relies on a Missouri case with facts almost identical to the case at hand. *State v. Guffey*, 262 S.W.2d 152, 156 (Mo. Ct. App. 1953) (no crime is committed in attempting to take a wild deer by shooting a "dummy deer"). *Guffey* has been overruled by state statute. See Mo. Ann. Stat. § 564.011.2 (Vernon 1979) ("no defense to a prosecution . . . that the offense attempted was, under the actual attendant circumstances, factually or legally impossible of commission, if such offense could have been committed had the attendant circumstances been as the actor believed them to be").

The modern trend of authority also bolsters our decision. The majority of jurisdictions have rejected the defense of legal impossibility by statute or court decision. See *State v. Rios*, 409 So. 2d 241, 244–45 (Fla. Dist. Ct. App. 1982) (listing thirty-two jurisdictions which had rejected the legal impossibility defense as of 1982); see also *Duke v. State*, 340 So. 2d 727, 730 (Miss. 1976) ("when the impossibility grows out of extraneous facts not within control of the party, impossibility is not a defense"); *State v. Lopez*, 100 N.M. 291, 292, 669 P.2d 1086, 1087 (1983) (defendant guilty of attempt to sell cocaine, even though sub-

stance was not cocaine, because situation is no different from a case "in which a defendant shoots into the intended victim's bed believing the victim to be there, when in fact the victim is elsewhere"); *State v. Hageman*, 307 N.C. 1, 13, 296 S.E.2d 433, 441 (1982) ("when a defendant has the specific intent to commit a crime and under the circumstances as he reasonably saw them did the acts necessary to consummate the substantive offense, but, because of facts unknown to him essential elements of the substantive offense were lacking, he may be convicted of an attempt to commit the crime"); *State v. Latraverse*, 443 A.2d 890, 894 (R.I. 1982) ("When a defendant has done all that he believes necessary to cause a particular result, regardless of what is actually possible under the existing circumstances . . . he has committed an attempt."); Minn. Stat. Ann. § 609.17.2 (West 1987) ("An act may be an attempt notwithstanding the circumstances under which it was performed or the means employed to commit the crime intended or the act itself were such that the commission of the crime was not possible, unless such impossibility would have been clearly evident to a person of normal understanding."); W. LaFave & A. Scott, Criminal Law § 6.3, at 515 (2d ed. 1986) (impossibility defense has been criticized by "many commentators and rejected . . . in virtually all of the recent recodifications").

The Model Penal Code rejects the legal impossibility defense:

> This approach . . . is unsound in that it seeks to evaluate a mental attitude—"intent" or "purpose"—not by looking to the actor's mental frame of reference, but to a situation wholly at variance with the actor's beliefs. In so doing, the courts exonerate defendants in situations where attempt liability most certainly should be imposed. In all of these cases the actor's criminal purpose has been clearly demonstrated; he went as far as he could in implementing that purpose; and, as a result, his "dangerousness" is plainly manifested.

Model Penal Code § 5.01 Comment at 308-09 (1985). See also Elkind, *Impossibility in Criminal Attempts: a Theorist's Headache*, 54 Va. L. Rev. 20, 33–36 (1968) (suggesting that courts need not await adoption of the Model Penal Code before rejecting the distinction between legal and factual impossibility as long as there is a "balancing [of] a number of considerations

to determine whether a criminal intent is adequately evidenced by a corroborative act and whether either the intent or the act represents a sufficient danger to warrant punishment").

■ The evidence at trial showed that defendant possessed the specific intent to take a wild deer out of season. Defendant's failure to actually take a live wild deer is of no consequence. This is not a case where defendant's conduct was equivocal, evidencing an intention to do both a legal and an illegal act. See *United States v. Oviedo*, 525 F.2d 881, 886 (5th Cir. 1976) (defendant not guilty of attempting to distribute controlled substance where chemical analysis revealed substance was a legal duplicate, because it was objectively reasonable to conclude that, as defendant testified, he was merely trying to "rip off" the government agent). There was no testimony that defendant thought the decoy was not a live deer. Instead, the defense was that it was defendant's companion who shot the decoy while defendant slept in the passenger seat. Therefore, there is no evidence which would allow us to conclude that defendant could have intended to consummate the legal act of shooting a deer decoy instead of the illegal act of shooting a live deer.

Failure to find that defendant's actions amount to a crime would frustrate the goals underlying wildlife protection legislation. See 10 V.S.A. § 4081(a) ("the policy of the state [is] that the protection, propagation, control, management and conservation of . . . wildlife . . . is in the interest of the public welfare, and the safeguarding of this valuable resource . . . requires a constant and continual vigilance"). A contrary holding would oblige state and local officials to respond to illegal hunting by more cumbersome, dangerous, after-the-fact methods. Prosecution based on a fresh kill defeats the purpose of legislation drafted to preserve wildlife. The difficulties and risks associated with detecting poachers without the benefit of decoys are manifest. As stated by a game warden at trial, there is a serious concern for the *safe* detection of poachers, and the decoy system was established in response to those concerns.

II.

■■ Defendant's remaining arguments are without merit. He did not request an instruction on entrapment nor did he

timely object to the court's charge. The issue is waived. V.R.Cr.P. 30. As to defendant's argument that a failure to strictly conform to Fish and Wildlife Department guidelines invalidates his conviction, we find no deviations from the inter-office procedures regarding the use of decoys that would merit a reversal. Unlike the guidelines associated with, for example, roadblocks, these procedures involve no constitutional implications.

*Affirmed.*