2006 VT 76

# State of Vermont v. Joseph Roger Lemay

[908 A.2d 430]

No. 04-493

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed July 28, 2006

*William H. Sorrell,* Attorney General, *David Tartter,* Assistant Attorney General, and *Sara R. Parsowith,* Legal Intern (On the Brief), Montpelier, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates,* Barre, for Defendant-Appellant.

¶ 1. **Johnson, J.** Defendant Joseph Roger Lemay appeals from his conviction on two counts of lewd and lascivious conduct with a child and one count of sexual assault. Defendant argues that the trial court erred by allowing inadmissible hearsay testimony, and that the State failed to present sufficient evidence to support a conviction on the charge of sexual assault. We hold that the court improperly allowed hearsay testimony, and we reverse and remand.

¶ 2. In October 2003, defendant was charged with two counts of lewd and lascivious conduct with a child under the age of sixteen. The State alleged that on or about October 21, 2003, defendant grabbed the

breasts of two girls, known as A.K. and B.S., both of whom were thirteen years old at the time of trial. The State later added one count of sexual assault on a minor, alleging that defendant had also inserted his finger into A.K.'s vagina. At the time of the incident, defendant was living with A.K.'s mother, A.K., and A.K.'s older brother in Bellows Falls, Vermont. The four had moved to Bellows Falls from Manchester, New Hampshire, in July 2003.[*] On the night of the incident, B.S., a friend of A.K. who lived nearby, came to A.K.'s house to spend the night. At some point, defendant began wrestling with the two girls. Several days later, A.K. told a neighborhood friend, Sara Campbell, Dawn Blanchard (Sara's mother), and Ilene Laurendeau (Sara's grandmother), that during this wrestling incident, defendant had touched her breasts and her vagina. In a separate conversation, B.S. told her friend, Samantha Chiu, and Cynthia Chiu (Samantha's mother), that defendant had touched her breast while they were wrestling at A.K.'s house.

¶ 3. A jury trial on all three charges began in August 2004. At a pretrial conference, the court asked the State and defense counsel whether there were hearsay problems with potential testimony from the friends and neighbors A.K. and B.S. had spoken to about the incident. The State argued that the testimony of these witnesses was admissible under Vermont Rule of Evidence 801(d)(1)(B) as prior consistent statements for the purpose of rebutting the suggestion of recent fabrication. Such a suggestion was present because defendant planned to argue that A.K. fabricated her charges of improper touching when her mother and defendant would not allow her to return to New Hampshire to celebrate Halloween. Defense counsel questioned the timing of the statements, but the court concluded, "I'm not sure the timing here is critical under the rule." Defense counsel responded, "[Y]ou may be right about that . . . . I still think it's a hearsay problem but I can . . . understand the exception how it goes, so if it comes in, . . . I'll deal with it." The court ruled that the statements were admissible under Rule 801(d)(1)(B), and instructed defense counsel that during the trial, he could preserve his hearsay objection by simply saying "hearsay" during the trial instead of repeating his timing argument at the bench.

---

[*] Defendant, who is not A.K.'s father, married A.K.'s mother in 2004.

¶ 4. At trial, in addition to the testimony of A.K. and B.S., the State presented the testimony of Sara Campbell, Dawn Blanchard, Ilene Laurendeau, Samantha Chiu, and Cynthia Chiu as to statements A.K. and B.S. made to them. Defense counsel objected to each witness's testimony by saying "hearsay" as instructed by the court, and the court overruled each objection. At the conclusion of the trial, the jury convicted defendant on all three charges.

¶ 5. Defendant first contends the trial court erred by admitting the testimony of the five witnesses to whom A.K. and B.S. reported their allegations. Defendant argues that the testimony of these witnesses was inadmissible hearsay because it did not meet the requirements of the prior consistent statement rule, and it did not fall under any hearsay exception. We agree that the court should not have allowed this testimony, and we reverse defendant's conviction.

¶ 6. The State concedes that the statements at issue were hearsay testimony, and not prior consistent statements under Rule 801(d)(1)(B). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *State v. Carter*, 164 Vt. 545, 549, 674 A.2d 1258, 1262 (1996); V.R.E. 801(c). A prior statement by a witness is not hearsay if it is "consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication." V.R.E. 801(d)(1)(B). We have previously held, however, that such statements must "have been made prior to the time that the supposed motive to falsify arose." *State v. Roy*, 140 Vt. 219, 227, 436 A.2d 1090, 1094 (1981). This is because "'[a] consistent statement that predates the motive is a square rebuttal of the charge that the testimony was contrived as a consequence of that motive. By contrast, prior consistent statements carry little rebuttal force when most other types of impeachment are involved.'" *Carter*, 164 Vt. at 550, 674 A.2d at 1262-63 (alteration in original) (quoting *Tome v. United States*, 513 U.S. 150, 158 (1995)). Defendant and the State agree that if A.K. fabricated her charges in response to being denied permission to travel to New Hampshire, her motive to fabricate arose before she and B.S. made the statements testified to by the State's witnesses. These statements were thus not admissible under Rule 801(d)(1)(B).

¶ 7. The State argues that we should affirm defendant's conviction despite the trial court's error in admitting the statements as prior consistent statements, contending that: (1) defendant failed to preserve his objection on hearsay grounds; (2) the statements were admissible under the hearsay exception for excited utterances pursuant to Rule

803(2); and (3) any error the court made in allowing the testimony was harmless beyond a reasonable doubt.

¶ 8. First, the State claims that defense counsel's initial discussion of the prior consistent statement issue at the pretrial conference was insufficient to raise defendant's objection, and that even if this objection was sufficient, defense counsel's objection of "hearsay" was insufficient to preserve the objection at trial. We hold that defendant's objection was preserved. Rule 103(a)(1) requires parties to preserve a claim of error in the admission of evidence by making "a timely objection . . . stating the specific ground of objection, if the specific ground was not apparent from the context." V.R.E. 103(a)(1). A key purpose of this rule "is to sufficiently alert the trial court to the theory behind the objection so that the judge can rule intelligently and quickly." *State v. Shippee*, 2003 VT 106, ¶ 10, 176 Vt. 542, 839 A.2d 566 (mem.). The discussion between the court, the State, and defense counsel at the pretrial conference was brief, and defense counsel was arguably too deferential to the court's incorrect assertion that the timing of the statements was not "critical under the rule." At minimum, however, in response to the State's assertion that the testimony was admissible, defense counsel mentioned the issue of the timing of the statements, and the court considered and dismissed the possibility that timing made a difference. Defense counsel's statement was clear and specific enough "to sufficiently alert the trial court to the theory behind the objection," and thus fulfilled the purposes of Rule 103(a)(1). *Id.* Counsel's later objections at trial, while they may not have ordinarily been sufficient to preserve a particular hearsay objection, were made according to the court's specific instructions for preserving the timing objection. Rule 103(a)(1) requires counsel to state the specific ground of an objection only "if the specific ground was not apparent from the context." V.R.E. 103(a)(1). In the context of the court's instructions, the meaning of the word "hearsay" was clear enough to preserve defendant's objection.

¶ 9. The State next asserts that one or more of the prior consistent statements could have been allowed as excited utterances pursuant to Rule 803(2). See *State v. Dreibelbis*, 147 Vt. 98, 100-01, 511 A.2d 307, 308 (1986) ("Even if the grounds relied on by the court below were error, . . . this Court has held that it will not reverse a correct result merely because it is reached for the wrong reason."). Rule 803(2) allows the admission of statements "relating to a startling event or condition

made while the declarant was under the stress of excitement caused by the event or condition." V.R.E. 803(2). The State contends that because Sara Campbell and Ilene Laurendeau testified that A.K. was shaking and crying when she made her statements to them, these statements could have been admitted as excited utterances. We disagree. "The underlying rationale for the exception lies in the assumption that a person's powers of reflection and fabrication will be suspended when she is subject to the excitement of a startling event, and any utterances she makes will be spontaneous and trustworthy." *In re Estate of Peters*, 171 Vt. 381, 391, 765 A.2d 468, 476 (2000). A statement does not necessarily need to be made immediately following an exciting event to fit within the excited utterance exception. See *State v. Shaw*, 149 Vt. 275, 281, 542 A.2d 1106, 1109 (1987) (holding that the victim's statement that the defendant had raped her was admissible as an excited utterance because it was made shortly after the defendant had returned to her apartment). The exception does require, however, that the excitement be "caused by the event or condition." V.R.E. 803(2). The State presents no evidence that A.K.'s excitement was caused by the event she was describing. A.K.'s statements to Sara Campbell and Ilene Laurendeau occurred several days after the event she was describing, but followed shortly after she was called into her house by her mother. A.K.'s excitement could have resulted from some aspect of her conversation with her mother that renewed the stress of the original incident, but the State has failed to demonstrate that this was the case. Instead, the State asks us to speculate about potential sources of A.K.'s excitement, arguing that only the stress of the original incident could have produced her distress. Engaging in such speculation would strip the excited utterance exception of any meaningful requirements. When the declarant's excitement results from some identifiable source, such as the shock of discovering the identity of her attacker or learning about a startling event for the first time, see *In re Estate of Peters*, 171 Vt. at 392, 765 A.2d at 477 (citing examples of later events that can produce excited utterances), we can determine whether the source was sufficiently startling to ensure the statement's spontaneity and trustworthiness. Here, we have too little information about the source of A.K.'s excitement to make such a determination. A.K.'s statements were not made soon enough to arise from the original incident, and we can infer the existence of a more immediate source of excitement only by assuming that some unidentified stimulus rekindled her original stress. These circumstances provide none of the assurances of reliability underlying the excited utterance exception. The exception

thus fails to provide an alternative basis for admitting the statements that would allow us to ignore the court's error.

¶ 10. The State urges us to affirm defendant's conviction despite this error because the error was harmless. We may find an error harmless only if it was harmless beyond a reasonable doubt. *State v. Trombley*, 174 Vt. 459, 462, 807 A.2d 400, 405 (2002) (mem.). The trial court's improper admission of prior consistent statements was not harmless error. Much of defendant's trial focused on a single key issue: whether the jury should believe the testimony of A.K. and B.S. that defendant touched them inappropriately. Defendant's strategy was to convince the jury that A.K. was angry at defendant and her mother because they would not let her travel to New Hampshire. A.K.'s mother stated that A.K. threatened to "get" defendant because he would not let her make the trip. She also testified that A.K. had told outrageous lies in the past, and that she did not believe her daughter's allegations. While none of the hearsay witnesses testified in great detail, they repeated the critical elements of the State's case. Most of this testimony focused on defendant's grabbing of the girls' breasts, but at least one hearsay witness, Dawn Blanchard, repeated A.K.'s allegation that defendant touched her vagina. Allowing five of the State's nine witnesses to make hearsay statements repeating the substance of the complainants' testimony made the State's case significantly stronger than it would have been otherwise. This seems particularly so where, as here, the effect of the error was to allow the jury to consider the inadmissible hearsay not only for its rehabilitative effect, but also "as substantive evidence of the truth of the matter asserted." *State v. Church*, 167 Vt. 604, 605, 708 A.2d 1341, 1342 (1998) (mem.) (quotations omitted) (explaining that prior consistent statements admitted under Rule 801(d)(1)(B) are nonhearsay and may be considered as substantive evidence). No reason appearing to the contrary, it is likely that the jury treated the testimony as it was intended by the State and allowed under the rule: as direct evidence of guilt. The balance of the admissible testimony was not so overwhelming as to compel a conclusion beyond a reasonable doubt that the court's multiple admissions of improper hearsay were harmless. We must therefore reverse and remand.

¶ 11. Defendant argues that in addition to a new trial on the two counts of lewd and lascivious conduct, he is entitled to an acquittal on the charge of sexual assault because the State presented insufficient

evidence to support his conviction on that charge. Defendant filed a post-trial motion for judgment of acquittal pursuant to Vermont Rule of Criminal Procedure 29(c); the trial court denied the motion, although it did so in part based on the testimony we have held was inadmissible. We must now consider whether, absent that testimony, the court should have granted defendant's motion. When we review a denial of a Rule 29 motion for judgment of acquittal, "we view the evidence presented by the State in the light most favorable to the prosecution, excluding any modifying evidence, and determine whether the State's evidence sufficiently and fairly supports a finding of guilt beyond a reasonable doubt." *State v. Squiers*, 2006 VT 26, ¶ 2, 179 Vt. 388, 896 A.2d 80.

■ ¶ 12. Defendant claims he was entitled to a judgment of acquittal because: (1) no evidence was presented at trial that he engaged in a "sexual act" with A.K.; and (2) if evidence showed the commission of such an act, it occurred in New Hampshire, not Vermont. We reject both of these claims. The definition of sexual assault on a minor requires a "sexual act," 13 V.S.A. § 3252(b), which the statute defines, in relevant part, as "any intrusion, however slight, by any part of a person's body or any object into the genital or anal opening of another," 13 V.S.A. § 3251(1). A.K.'s testimony was vague at times, but in response to questions from both the state's attorney and defense counsel as to whether or not defendant had put his finger "in" or "inside" her vagina, she indicated several times that he had. We hold that a reasonable jury could have believed this testimony and concluded beyond a reasonable doubt that defendant's finger penetrated A.K.'s vagina.

■ ¶ 13. Similarly, A.K.'s testimony was sufficient to convince a reasonable jury that such an act took place in Vermont. Defendant argues that A.K. alleged vaginal touching only during the spring of 2003, when A.K. was living in New Hampshire. In A.K.'s trial testimony, however, when the state's attorney asked A.K. about incidents when defendant touched her "in the vagina," A.K. responded that such incidents happened both when she was living in New Hampshire and after she had moved to Vermont. Both sides asked A.K. to explain testimony from her prior deposition; defense counsel pointed out excerpts seeming to indicate that the dates of any vaginal touching were too early to have taken place in Vermont, while the state's attorney identified testimony indicating that defendant had touched A.K.'s vagina in both Bellows Falls and Manchester, New Hampshire.

The jury was entitled to conclude from A.K.'s trial testimony that at least one incident of sexual assault took place in Vermont, and therefore, defendant's motion for a judgment of acquittal was properly denied by the trial court.

*Reversed and remanded.*