2012 VT 12

**STATE of Vermont v. Alexander STOLTE**

[44 A.3d 166]

No. 11-407

¶ 1. February 10, 2012. Defendant Alexander Stolte appeals the decision of the Orange Criminal Division denying his motion for bail review. Defendant, charged with second-degree murder and held without bail, requested that the court review bail based on evidence developed after his initial bail hearing in March 2010. The criminal division refused to consider the new evidence and to reopen the question of whether the evidence of defendant's guilt is "great," as required to deny bail under the Vermont Constitution and 13 V.S.A. § 7553, on the ground that it is "modifying evidence." We reverse and remand.

¶ 2. The history of this case may be summarized as follows. In the early morning of March 18, 2010, one-year-old Kyleigh McDaniel died at Gifford Medical Center of head injuries resulting from an apparent homicide. At the time of the child's death, defendant was the boyfriend of the child's mother, MacKenzie McDaniel. Defendant was babysitting the child on the night of March 17 at the home of his mother in Chelsea, where he was staying with the child's mother, his own mother, and his younger sister. The Vermont State Police began an investigation into the child's death and interviewed defendant five times on March 18 — three times at Gifford Medical Center during the early morning, once on the South Royalton green that evening, and finally at the Royalton state police barracks.

¶ 3. During the course of these interviews, defendant recounted the details of his previous day caring for the child. Defendant did not leave the house all day, but the child's mother had left for work at around 3:00 p.m. and defendant's mother, after stopping in during the early evening, had left for the night at around 6:30 p.m. Defendant's mother had checked on the child prior to her departure and reported nothing unusual. Defendant recalled putting the child to bed and giving her a bottle at around 9:30 p.m., when he noticed that one of her eyes was "drooping." Concerned, he called the child's mother, who thought the droopy eye was caused by the child's cold. Defendant maintained that he periodically checked on the child until 11:20 p.m., when he found her bottle in the same position it had been in when he had put her to bed and that she was barely breathing. Defendant then called 911, and an ambulance took the child to the hospital, where she died shortly after arrival.

¶ 4. Based on the foregoing information and the results of a preliminary autopsy conducted on March 18, defendant was arrested after his interview at the Royalton barracks. On March 19, he was charged with second-degree murder under 13 V.S.A. § 2301 and held without bail. After a bail review hearing on March 30, the criminal division ordered that defendant be held without bail pending trial under Chapter II, § 40(1) of the Vermont Constitution and § 7553, which permit the denial of bail in cases where the defendant is charged with a crime punishable by life imprisonment and "the evidence of guilt is great."

¶ 5. In its written decision, the court characterized the evidence against defendant as "circumstantial, but . . . substantial nevertheless." Referring to the autopsy findings concerning the child's head injuries — and noting other injuries to her neck, face, chest, right arm, and right leg — it reasoned that "[t]he evidence . . . strongly supports a finding that the child's injuries occurred . . . during a period of time in which the child was in defendant's exclusive care" and that "[t]here is strong evidence that defendant was the only possible source of the injuries." The court's decision did not reference that the autopsy also found pubic hairs "in and around [the child's] vagina," as well as cuts in her vaginal area and "biological fluid on [her] body."

¶ 6. In October 2011, defendant filed a motion to review bail based on evidence discovered since his March 30, 2010 bail hearing. Defendant argued that the result of a mitochondrial DNA test conducted on one of the hairs found on the child, which was reported in June 2011 and which excluded defendant as the source of the hair, substantially undermines the State's original theory that defendant was the only person who could have committed the murder.[1] Based on the DNA evidence, as well as other evidence developed in the course of discovery, defendant argued that the evidence of his guilt was no longer "great" as required to hold him without bail.[2] Accordingly, he requested that the court set conditions of release. See 13 V.S.A. § 7554 (outlining factors to consider in setting bail and providing for certain conditions of release).

¶ 7. The criminal division denied defendant's motion. At a hearing held on October 26, the court explained on the record that under *State v. Turnbaugh*, 174 Vt. 532, 811 A.2d 662 (2002) (mem.), the evidence emphasized by defendant was "modifying evidence" that the court could not use to reconsider its initial bail decision. Citing *State v. Duff*, 151 Vt. 433, 563 A.2d 258 (1989), which adopted the standard applied in *Turnbaugh*, it reiterated in its written order that "[t]he evidence proffered by defendant . . . was modifying evidence that did not change the determination as to whether the state has established a prima facie case by showing substantial, admissible evidence as to each element of the offense." Defendant appealed.

¶ 8. Defendant argues that the court erred in classifying the DNA evidence as

---

[1] Defendant's motion also explained that because "mitochondrial DNA is maternally inherited, and all maternally related individuals are expected to have the same [DNA] profile," the test result also excluded defendant's mother and sister as the source of the hair.

[2] Defendant's motion also cited the apparently new fact — since the first bail hearing — that the child's crib was located close to an unlocked outside door to suggest that, contrary to the court's initial determination, someone besides defendant could have been in the house when the child was killed.

"modifying evidence," not to be taken into consideration under *Duff*, for two reasons. First, defendant argues that the DNA test is the State's evidence, as opposed to evidence developed by the defense, because the State itself collected hair samples and arranged for their analyses by the FBI. Second, he argues that modifying evidence is evidence requiring a credibility determination, such as conflicting expert testimony, and that he is not seeking to use the evidence to counter the State's evidence or impeach its witnesses, but rather to challenge the trial court's rationale for holding him without bail. Our review of the court's decision thus turns on the definition of "modifying evidence," a question we undertake de novo. *State v. Eldredge*, 2006 VT 80, ¶ 7, 180 Vt. 278, 910 A.2d 816.

¶ 9. *Duff* established that evidence of guilt is "great" when the State can make out a prima facie case; that is, when "the evidence, taken in the light most favorable to the State and *excluding modifying evidence*, can fairly and reasonably show [the] defendant guilty beyond a reasonable doubt." *State v. Duff*, 151 Vt. at 439, 563 A.2d at 262-63 (emphasis added) (quotation omitted). This standard was borrowed from, and is coextensive with, the State's burden to prevail against a motion to dismiss for lack of evidence beyond a reasonable doubt. See V.R.Cr.P. 12(d)(2) (providing that a prima facie case lies when there is "substantial, admissible evidence as to the elements of the offense challenged . . . sufficient to prevent the grant of a motion for judgment of acquittal at the trial"). For the reasons explained below, we hold that the court erred in classifying the DNA evidence in this case as "modifying evidence" akin to the testimonial evidence excluded from consideration in *Duff* and *Turnbaugh*.

¶ 10. *State v. Gibney* offers this Court's fullest discussion of the meaning of modifying evidence. 2003 VT 26, 175 Vt. 180, 825 A.2d 32. In *Gibney*, reviewing the trial court's denial of the defendant's motion for acquittal — decided under the same standard as a motion for dismissal for lack of a prima facie case — we defined "modifying evidence" as "exculpatory evidence introduced by defendant, *such as countervailing testimony." Id.* ¶ 14 (emphasis added). The evidence thus excluded from the trial court's analysis in *Gibney* was testimony from an alibi witness and from a witness who had heard gunshots involved in a murder. *Id.* ¶¶ 15-16.

¶ 11. *Gibney* drew its definition from two federal cases, *United States v. Kelley*, 152 F.3d 881 (8th Cir. 1998), and *United States v. Wolfson*, 322 F. Supp. 798 (D. Del. 1971). In *Kelley*, the Eighth Circuit explained that "[a] motion for a judgment of acquittal should be denied when there is substantial evidence justifying an inference of guilt *irrespective of any countervailing testimony that may be introduced.*" 152 F.3d at 886 (emphasis added) (quotation omitted). In *Wolfson*, the court stated that in deciding a motion for judgment of acquittal, the court should not consider "evidence adduced by the defendant." 322 F. Supp. at 806. Though laconic and indirect, *Gibney* and its supporting sources nevertheless reflect that "modifying evidence," as characterized in *Duff*, is testimonial evidence introduced by the defense in contravention to the State's evidence, the credibility or weight of which is ultimately for the factfinder's determination.

¶ 12. Treating modifying evidence as testimonial evidence offered by the defense is consistent with the rationale for its exclusion from prima facie evidence determinations. As noted by the criminal division in this case, *Turnbaugh* emphasized that the inquiry under § 7553 is limited to whether the State has a prima facie case, and that "credibility determinations based on conflicting evidence" are not at issue. 174 Vt. at 534, 811 A.2d at 665. The *Turnbaugh* Court explained that "[d]irect conflicts between inculpatory [and] exculpatory facts cannot be re-

solved at this stage" because "[s]uch matters must await jury determination at trial." *Id.*; see also *Gibney*, 2003 VT 26, ¶¶ 14-16 (refusing to resolve credibility questions posed by conflicting State and defense testimony). *Turnbaugh* thus affirmed the court's refusal to consider affidavits introduced by the defendant that contradicted the State's evidence of the defendant's alleged incriminating statements. 174 Vt. at 533-35, 811 A.2d at 664-66. In *Gibney*, we noted the same rationale for excluding the testimony of defense witnesses in considering a motion for judgment of acquittal. 2003 VT 26, ¶¶ 14-16 (reasoning that a credibility determination raised by conflicting testimony was reserved exclusively for jury). That the exclusion of modifying evidence is meant to avoid judicial decisions on credibility only when live witnesses or affidavits are presented confirms the definition of modifying evidence in our prior cases as defense testimony introduced to meet and dispute the State's evidence.

¶ 13. While testimonial evidence raises inherent credibility questions not properly resolved by judges at bail hearings, nontestimonial evidence does not. Nontestimonial evidence is any evidence which does not derive and depend on the observation, recollection, reliability, or veracity of witnesses, whether in the form of live testimony or a sworn statement, and which therefore does not implicate a credibility determination. Examples of nontestimonial evidence can include DNA analysis, photographs, or other physical evidence, the provenance of which is not contested. Where the validity of such nontestimonial evidence is undisputed, there is no question of credibility. For example, in the case of an undisputedly valid DNA result, the jury would not be required to decide whether it *believed* the test result, but only what it proved.

¶ 14. In other cases, however, the underlying validity of nontestimonial evidence may be disputed. For example, a photograph may purport to show a defendant in another state at the time of an alleged crime, but other evidence may support that the photo was doctored, or its quality may be so poor that the State could reasonably argue that it did not show the defendant at all. In such a case, the evidence would properly be considered modifying evidence because it raises a factual question — such as whether a photograph really showed the defendant — that must be left for the jury at trial.

¶ 15. Here, it was error to necessarily equate defendant's new DNA evidence, purportedly undisputed as to its foundation, with disputed, testimonial "modifying evidence." Accordingly, the court's decision is reversed and the matter remanded. On remand, the court must first ascertain whether the proffered evidence, if relevant, is undisputed as to its origin and result as a matter of fact. If a genuine dispute as to either arises, then the evidence is modifying evidence. But if no such conflict exists, the court must determine whether, if admissible, the evidence would have made a difference to its initial determination on whether the State's prima facie evidence of guilt was "great" for purposes of holding defendant without bail.

*Reversed and remanded.*