**ENTRY ORDER**

2018 VT 43

SUPREME COURT DOCKET NO. 2018-105

APRIL TERM, 2018

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Rutland Unit, |
| | } | Criminal Division |
| | } | |
| Jack Sawyer | } | DOCKET NO. 194-2-18 Rdcr |

Trial Judge: Thomas A. Zonay

In the above-entitled cause, the Clerk will enter:

¶ 1.    Defendant Jack Sawyer appeals the trial court's decision holding him without bail. Defendant is charged with four separate counts, each predicated on his alleged attempt to commit a crime, and three of which are punishable by life imprisonment.  The sole question before this Court is whether the evidence of guilt is great that defendant attempted to commit any of the four charged crimes given the definition of "attempt" under Vermont law.  We hold that the weight of the evidence is not great that defendant has committed any act or combination of acts that would satisfy Vermont's definition of an attempt to commit any of the charged crimes.  We reverse the trial court's hold-without-bail order and remand for further proceedings.

¶ 2.    Each of the four counts that defendant is charged with arises from his alleged attempt to commit a mass shooting at Fair Haven Union High School (FHUHS).  The first count alleges that defendant attempted to cause bodily injury to another with a deadly weapon in violation of 13 V.S.A. §§ 9 and 1024(a)(2).  The second count alleges that defendant attempted to commit first-degree murder in violation of 13 V.S.A. §§ 9 and 2301.  The third and fourth counts allege that defendant attempted to commit aggravated murder in violation of 13 V.S.A. §§ 9, 2311(a)(3), and 2311(a)(7).  The attempted aggravated murder counts are punishable by life imprisonment with no possibility of parole and the attempted first-degree murder count carries the potential for life without parole.  13 V.S.A. § 9(a) ("If the offense attempted to be committed is murder [or] aggravated murder . . . a person shall be punished as the offense attempted to be committed is by law punishable."); id. § 2303(a)(1)(A)-(B) ("The punishment for murder in the first degree shall be imprisonment for . . . a minimum term of not less than 35 years and a maximum term of life; or . . . life without the possibility of parole."); id. § 2311(c) ("The punishment for aggravated murder shall be imprisonment for life and for no lesser term. . . . A person sentenced under this section shall not be eligible for parole during the term of imprisonment imposed herein . . . .").

¶ 3.    Defendant was held without bail under 13 V.S.A. § 7553, which implements the Vermont Constitution's presumption that a person shall be released on bail, unless the person is charged with "an offense punishable by death or life imprisonment . . . when the evidence of guilt is great." Vt. Const. ch. II, § 40.  Section 7553 states that "[a] person charged with an offense punishable by life imprisonment when the evidence of guilt is great may be held without bail."  In cases, such as this one, where a defendant is charged with an offense punishable by life imprisonment and the constitutional presumption in favor of release with bail or other conditions does not apply, "the presumption is switched so that the norm is incarceration and not release." State v. Blackmer, 160 Vt. 451, 458, 631 A.2d 1134, 1139 (1993).

¶ 4.    The constitutional standard of proof—that "evidence of guilt is great"—is satisfied when the State can meet the standard of Vermont Rule of Criminal Procedure 12(d).  State v. Duff, 151 Vt. 433, 440, 563 A.2d 258, 263 (1989) ("Accordingly, we adopt the standards under V.R.Cr.P. 12(d) as the correct standard of review under Ch. II, § 40 of the Vermont Constitution, and under 13 V.S.A. § 7553.").  Rule 12(d) permits dismissal of a charge when the State cannot provide sufficient evidence on each element of the charged offense such that a reasonable jury could find the defendant guilty beyond a reasonable doubt.  V.R.Cr.P. 12(d)(1) ("The defendant may move for dismissal of the indictment or information on the ground that the prosecution is unable to make out a prima facie case against him.").  Thus, a defendant may be held without bail under § 7553 when two requirements are met: (1) the defendant is charged with a crime carrying a potential sentence of life imprisonment, and (2) the State can present evidence that, "taken in the light most favorable to the State and excluding modifying evidence, can fairly and reasonably show defendant guilty beyond a reasonable doubt."  Duff, 151 Vt. at 439, 563 A.2d at 263 (quotation omitted).  This Court reviews a trial court's decision to hold a defendant without bail under § 7553, without deference, by examining the record presented in the trial court. V.R.A.P. 9(b)(2).  We do so by applying the standard enunciated in Duff.  State v. Hardy, 2008 VT 119, ¶ 10, 184 Vt. 618, 965 A.2d 478 (mem.).

¶ 5.    Applying the standard described above, we now discuss the facts of this case taken in the light most favorable to the State and excluding all modifying evidence.[1]  On February 14, 2018, the Fair Haven police department received a call from the Vermont State Police about a possible threat to FHUHS.  Based on this reported threat, the Fair Haven police located defendant at the home of one of his friends.  Police explained to defendant that they were there because a threat to FHUHS had been reported.  Defendant responded that he had problems with the school when he attended, and that he was still kind of upset with the school but had moved past it.

---

[1]  The recitation of the facts in the trial court's decision to hold defendant without bail includes facts that are not relevant to the issue before us.  The trial court was required to make a dual determination: first, whether the weight of the evidence supported holding defendant without bail under § 7553, and second, whether the trial court should nonetheless exercise its discretion to release defendant with conditions despite a decision that defendant could be held without bail. State v. Avgoustov, 2006 VT 90, ¶ 2, 180 Vt. 595, 907 A.2d 1185 (mem.) (explaining trial court must first determine whether weight of evidence supports holding defendant without bail and then "must exercise its discretion in determining whether or not to impose bail and conditions of release").  The issue on appeal focuses solely on the trial court's decision that the evidence of guilt is great; therefore, we need not consider the facts the trial court considered when exercising its discretion to hold or release defendant.

Defendant explained to police that he had been engaged in target practice, showed police the empty milk jugs he used for target practice, and said that he had recently purchased a shotgun at a local business after returning to Vermont from a program in Maine. Defendant also showed police the buckshot he was using at the time. The police did not detain defendant because, as the Fair Haven chief testified at the trial court hearing, they did not have probable cause to take any further action at that time.

¶ 6. The next day, the Dutchess County, New York, sheriff's office contacted Fair Haven police regarding Facebook messages received by a Dutchess County student from defendant that suggested defendant was making threats against FHUHS. The messages were admitted at the trial court's weight-of-the-evidence hearing. In the messages, defendant writes "[j]ust a few days ago I was still plotting on shooting up my old high school so it's not like I really wanted a future anyways." His messages also spoke approvingly of a recent school shooting in another state. The Fair Haven police chief reviewed the messages and concluded that police should question defendant again.

¶ 7. The police detained and interviewed defendant. During this interview, defendant stated that when he attended FHUHS, which he left permanently in 2016, he had planned to commit a mass shooting at the school. He also stated that until about a week or two prior to the interview, he was still thinking about committing a school shooting at FHUHS, though later in the interview he also admitted to discussing school shootings a day or two earlier in the Facebook messages described above. He discussed the need to go to FHUHS before the shooting to observe the School Resource Officer's habits and pattern of behavior in preparation for any shooting because, as defendant noted, the Officer would likely be the only person in the school that could stop defendant once a shooting began. Defendant had not yet gone to the school to observe the Officer. Defendant also told police that he planned to conclude any shooting in the school's library, in mimicry of the Columbine shooting, and discussed the kinds of guns and other items that he would want to have for a school shooting. Defendant told police that he had converted money from his bank account to Bitcoin, installed a browser that would allow him to access the dark web, and intended to purchase a handgun with Bitcoin on the dark web. He had been unable to purchase this handgun, which is included in the lists of needed equipment in defendant's journal as described below, because the value of defendant's Bitcoin had diminished. Defendant told the officers that he wanted to exceed the body count from the Virginia Tech shooting and that he had chosen his ammunition accordingly. Finally, defendant told police that he wanted to commit a mass shooting on the anniversary of the date of the Columbine school shooting but that FHUHS would not be in session at that time, and he instead would commit any shooting on March 14th.

¶ 8. Police searched defendant's car after he was detained and found a shotgun and seventeen rounds of ammunition. Police also found four books related to school shootings, including the Columbine massacre, as well as defendant's journal. The journal was admitted into evidence at the trial court's hearing. Defendant had placed a label on the front of the journal, which read "The Journal of an Active Shooter." In the journal, defendant expresses suicidal ideation and his desire to commit "suicide by homicide." In an entry dated October 25, 2017, he writes that he wants to commit suicide "in a bigger and better way than just the stereotypical suicide." Regarding his alleged plan to commit a mass shooting at FHUHS, in an entry dated November 29, 2017, he writes:

I've had a change in plans. The day will be coming much more sooner than previously thought. I've realized the huge importance of being able to kill the kids that I actually know vs. waiting a year or so until they're all gone. I'm aiming to kill as many as I can and whoever I can, but it'd also be more fun and satisfying to kill a lot of the dumb fucks that I actually went to school with, I know what they're like and how idiotic they are. With the sudden shift in plans, that also means that I need to prepare and gather supplies quicker. It shouldn't take too extremely long to buy the guns, but it'll be difficult to make the bombs since I don't really have a good place to practice detonating them, but I'll probably figure it out.

By entry dated December 4, 2017, he writes: "It would save me a lot more energy and hopelessness to take myself out now. But I also can't abandon my plan. . . . From the time I had the first initial thoughts of shooting up FHUHS, it was too late to turn back on it." Defendant's journal includes lists of materials, including several different kinds of guns, that defendant wanted to have for a school shooting, as well as possible dates for a school shooting according to the FHUHS calendar. The last entry in defendant's journal before he was arrested, which is dated February 3, 2018, describes his unsuccessful attempt to buy a shotgun in Maine. He indicates that he will take a "low key trip to VT soon to get the shotgun and hopefully rifle."

¶ 9. After searching defendant's car, police went to defendant's father's house. Defendant's father gave police a second copy of the book about the Columbine school shooting found in defendant's car and a shotgun belonging to defendant. The shotgun had a modified stock and barrel, such that the total size of the gun was shorter than a typical shotgun.

¶ 10. On February 16, 2018, defendant was arraigned on the four offenses described above and held without bail pending a weight-of-the-evidence hearing. The trial court held a hearing over two days in late February and early March 2018. The trial court issued an order holding defendant without bail under § 7553 on March 19, 2018. This appeal followed.

¶ 11. Each of the offenses that defendant is charged with is predicated on defendant's alleged attempt to commit that offense. Thus, to satisfy the § 7553 weight-of-the-evidence standard, the State must show that it has substantial, admissible evidence on the attempt element in addition to each element of the substantive offense defendant allegedly attempted to commit. See Duff, 151 Vt. at 439, 563 A.2d at 263. Defendant argues that the State cannot show that it has sufficient evidence on the attempt element to support a finding that the evidence of guilt is great. This argument presents a pure question of law, which requires this Court to consider Vermont's law defining an attempt. This Court considers questions of law de novo, without deference to the trial court's interpretation of the law. State v. Therrien, 2011 VT 120, ¶ 5, 191 Vt. 24, 38 A.3d 1129.

¶ 12. An "attempt" under Vermont law requires an intent to commit a crime, coupled with an act that, but for an interruption, would result in the completion of a crime. State v. Hurley, 79 Vt. 28, 31, 64 A. 78, 78 (1906); see 13 V.S.A. § 9(a) ("A person who attempts to commit an offense and does an act toward the commission thereof, but by reason of being interrupted or prevented fails in the execution of the same, shall be punished as herein provided unless other

4

express provision is made by law for the punishment of the attempt."). This Court's decisions dictate how this standard applies to a given set of facts.

¶ 13. Those decisions begin with State v. Hurley, decided over one hundred years ago. 79 Vt. at 28, 64 A. at 78. In Hurley, this Court was asked to decide whether obtaining the tools necessary to complete an intended crime constituted an attempt to commit that crime. The defendant was convicted of attempting to break out of jail after he was found in possession of a bundle of twelve hacksaws which an accomplice tossed to him through the bars covering an open window in the jail. Despite evidence of the defendant's intent to break out, this Court reversed his conviction and drew a distinction between generally preparatory acts and preparatory acts constituting an attempt to commit a crime: "Acts of preparation . . . may have such proximity to the place where the intended crime is to be committed, and such connection with a purpose of present accomplishment, that they will amount to an attempt." Id. at 30-31, 64 A. at 78. Proximity is the test under Hurley, whether measured as the actor's physical proximity to the location of the intended crime, or the temporal or kinetic proximity of the act to the completion of the intended crime. An attempt, then, is a preparatory act "such as would be likely to end, if not extraneously interrupted, in the consummation of the crime intended." Id. at 31, 64 A. at 78. Acts of mere preparation are not generally acts of attempt.

¶ 14. Regarding the precise question presented in Hurley, this Court held that, despite a showing of the intent to commit the offense, obtaining the tools necessary to complete an intended crime did not constitute an attempt to commit that crime. The Hurley defendant had obtained the tools necessary to break out of jail—that is, to commit a crime—"[b]ut he had not put that design into execution, and might never have done so." Id. at 33, 64 A. at 79. "To constitute an attempt," the gathering of the tools necessary to commit a crime "must be connected with the accomplishment of the intended crime by something more than a general design." Id. (emphasis added).

¶ 15. People v. Murray, which the Hurley Court relied on, provides a succinct illustration of the distinction between an act of preparation and an act of attempt.

> The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made. To illustrate: a party may purchase and load a gun, with the declared intention to shoot his neighbor; but until some movement is made to use the weapon upon the person of his intended victim, there is only preparation and not an attempt.

14 Cal. 159, 159-60 (1859). This Court's cases since Hurley are consistent with the Hurley definition of an attempt and informed by the Murray illustration.

¶ 16. For example, in State v. Boutin, this Court was asked to consider whether a person holding a bottle over his head and advancing on a second, retreating person during an argument had attempted to commit an assault. 133 Vt. 531, 346 A.2d 531 (1975). This Court held that defendant's actions did not amount to an attempt: "To constitute an attempt to commit a crime, the act must be of such a character as to advance the conduct of the actor beyond the sphere of mere

5

intent. It must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation." Id. at 533, 346 A.2d at 532. Put simply, the act of holding the bottle was not so close to the act of striking the retreating person as to permit the conclusion that the first act would necessarily culminate in the second act. In reaching this conclusion, this Court noted that the defendant was never within ten feet of the other person and did not throw the bottle or move to strike the other person with the bottle. Id. at 532-33, 346 A.2d at 532.

¶ 17. In contrast, in State v. Woodmansee, this Court was asked to consider whether a person found kneeling in an empty apartment, with matches in his hand, and surrounded by a rolled cone of newspaper, a jar of paint thinner, and a strong smell of gasoline could be charged with an attempt to commit arson. 124 Vt. 387, 391, 205 A.2d 407, 410 (1964). Relying on Hurley, this Court held that this act crossed the line from preparation to attempt. Id. That is, "the striking of a match would have, on the evidence, consummated the crime." Id.; see also State v. Morse, 130 Vt. 92, 94, 286 A.2d 286, 287 (1971) (holding that person hiding under refuse in garbage truck driving out of prison could be charged with attempted escape because "[t]he State's evidence is persuasive and the inference compelling beyond conjecture that, had the defendant's concealment gone undiscovered, he would have departed from the prison gates and escaped from confinement"); State v. Harrington, 128 Vt. 242, 250-51, 260 A.2d 692, 697 (1969) ("When the respondent mailed the letter to the intended victim the overt act, designed to accomplish the ultimate purpose, was committed. The communication left his control. And with the mailing, the ability to revoke or interrupt was out of reach. The extortion failed but the attempt was made.").

¶ 18. This Court has most recently considered the definition of an attempt in State v. Devoid, 2010 VT 86, 188 Vt. 445, 8 A.3d 1076. In Devoid, the defendant was charged with attempted voyeurism after a neighbor reported that he was staring at a window in her shower while she was using the shower. This Court concluded that the State failed to prove that the defendant would have been able to view any of the areas of the body protected by the voyeurism statute from where he was standing, and, thus, the State had failed to prove that the defendant attempted to commit the crime of voyeurism. Id. ¶¶ 16-17. This Court explained that two elements are required for an attempt: "(1) intent to commit a certain crime; and (2) an overt act designed to carry out that intent."[2] Id. ¶ 10 (quotation omitted). The necessary act "must advance beyond mere intent and

_____

[2] The phrase "overt act" is used to refer to an act taken in an attempt to commit a crime, as in Devoid, and to refer to an act taken in furtherance of a conspiracy. Despite the phrase's common usage relative to these two offenses, "overt act" does not mean the same thing when used in the context of an attempt as in the context of a conspiracy. "[T]he slightest action on the part of a conspirator" can constitute an overt act for purposes of a conspiracy charge. State v. Stewart, 643 N.W.2d 281, 297 (Minn. 2002). An overt act in the context of a conspiracy need not necessarily rise even to the standard required to show a "substantial step" in furtherance of an attempt to commit a crime: "A defendant may therefore be convicted of a conspiracy to commit a felony without committing the felony and without even an attempt to commit it." Owens v. State, 929 N.E.2d 754, 756-57 (Ind. 2010).

The distinction between usage of the phrase "overt act" in these two distinct contexts may be attributed to the differing nature of the two offenses and the purpose of the act requirement relative to each offense. "The function of the overt act in a conspiracy prosecution is simply to manifest that the conspiracy is at work, and is neither a project still resting solely in the minds of

6

reach far enough toward accomplishing the desired result to amount to the commencement of the consummation" of the attempted crime. Id. ¶ 11 (quotation omitted). Because the defendant could not view any protected areas from his vantage point, he would have had to take further action, such as standing on something, to be able to see those areas of the complainant's body. He took no such action, and therefore did not attempt to commit voyeurism.

¶ 19. Devoid clarifies an essential point in Vermont's definition of an attempt: our law on attempt does not permit an abandonment defense. Thus, "[o]nce an actor commits an overt act," which constitutes the commencement of the consummation of the crime under Hurley, " 'the offense is complete, and abandonment of the enterprise does not negate guilt.' " Id. ¶ 11 (quoting State v. Synott, 2005 VT 19, ¶ 22, 178 Vt. 66, 872 A.2d 874). This Court rejected an abandonment defense in Synott, in which the defendant was charged with attempted sexual assault. 2005 VT 19, ¶ 1. The evidence showed that the defendant made repeated aggressive sexual advances toward the complainant and did not cease until the defendant turned away from the complainant and she was able to run out of the room to contact police. Relying on treatises and caselaw from other states, this Court explained that a defendant's voluntary abandonment after an attempt to commit a crime does not eradicate guilt for the crime when the defendant has committed acts that progress beyond acts of mere preparation to acts in commission of the attempt. Id. ¶ 22 (" '[A] voluntary abandonment of an attempt which has proceeded beyond mere preparation into an overt act or acts in furtherance of the commission of the attempt does not expiate the guilt of, or forbid punishment for, the crime already committed.' " (quoting Wiley v. State, 207 A.2d 478, 480 (Md. 1965)). In sum, if we adopted the State's argument that defendant's preparatory acts constituted an attempt to commit the crimes charged, defendant would have been unable to abandon his plan and could have been punished just as if he had completed it.

¶ 20. The unavailability of an abandonment defense differentiates Vermont's law on attempt from the substantial-step analysis in the Model Penal Code, which permits abandonment as an affirmative defense.[3] "When the actor's conduct would otherwise constitute an attempt . . . it

_____

the conspirators nor a fully completed operation no longer in existence." Yates v. United States, 354 U.S. 298, 334 (1957) (citation omitted), overruled on other grounds by Burks v. United States, 437 U.S. 1 (1978). This is fundamentally different from the function of the act requirement for purposes of an attempt prosecution, wherein prosecution is premised on the act taken in attempt rather than the actor's intent to act.

[3] The State argues that this Court's decision in Devoid endorsed the Model Penal Code rule regarding attempts. While Devoid cited Model Penal Code § 5.01 as persuasive authority, that decision neither endorsed nor adopted the substantial step analysis. See 2010 VT 86, ¶¶ 16, 18. To the contrary, in Devoid this Court reaffirmed the standard for assessing "attempt" set forth in Hurley. Id. ¶ 11 ("An overt act must advance beyond mere intent and 'reach far enough toward accomplishing the desired result to amount to the commencement of the consummation.' "(quoting Synnott, 2005 VT 19, ¶ 22)). Furthermore, Devoid primarily cited the Model Penal Code as support for this Court's decision in State v. Curtis, 157 Vt. 629, 603 A.2d 356 (1991), which rejected impossibility as a defense to an attempt charge. The impossibility defense is not at issue in this case and we need not consider the Model Penal Code's relevance to this Court's decision in Curtis.

7

is an affirmative defense that he [or she] abandoned his [or her] effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose." Model Penal Code § 5.01(4). In the absence of an abandonment defense to an attempt charge under Vermont's law, applying the substantial-step analysis rather than the Hurley standard would effectively result in the criminalization of an actor's intent.[4]

¶ 21. The substantial-step analysis presents a lower bar regarding the kind of act required to show that a defendant has attempted to commit a crime: an act may be used to prove an attempt if the act is a "substantial step in a course of conduct planned to culminate in [the] commission of the crime," when the act is performed with the intent required to commit the attempted crime. Id. § 5.01(1)(c). This standard suggests that preparatory acts such as those rejected in Hurley could serve as the basis for an attempt charge under the Model Penal Code. Indeed, the Model Penal Code specifically provides that the "possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, if such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances" may be "strongly corroborative" of the actor's purpose in attempting to commit a crime. Id. § 5.01(2)(f). This rule is directly contrary to Hurley's clear statement that possession of the tools or materials necessary to commit a crime is not an attempt to commit the crime, but is merely a preparatory, and therefore not criminally culpable, act. 79 Vt. at 33, 64 A. at 79. The fact that Vermont law does not allow an abandonment defense once an attempt has been made recognizes the higher bar in place to prove an attempt under Hurley and its progeny.

¶ 22. Vermont's law defining an attempt is controlled by Hurley, as is this case. We conclude that defendant's actions do not meet the standard set out in Hurley and subsequent cases.

¶ 23. The State's evidence, taken in the light most favorable to the State and excluding modifying evidence, showed the following facts. Duff, 151 Vt. at 439, 563 A.2d at 263. Defendant purchased a shotgun and planned to purchase at least one more gun. He planned to conduct surveillance at FHUHS to determine when the School Resource Officer was not generally present. Defendant had not yet purchased another gun or conducted surveillance at FHUHS. He sent Facebook messages to the effect that he planned to commit a shooting at FHUHS, and he wrote at length in his journal that he currently planned to commit such an act at some future time. Defendant also kept lists of the items that he needed before actually committing a shooting at the school, many of which he did not have. He researched the FHUHS calendar to select an optimal date for the planned shooting.

---

[4] It is fundamental that criminal culpability generally accrues to intent coupled with action, rather than intent alone. 1 W. LaFave, Substantive Criminal Law § 5.1 (3d ed. 2017) ("It is commonly stated that a crime consists of both a physical part and a mental part; that is, both an act or omission . . . and a state of mind."). The abandonment defense limits the substantial-step rule such that a preparatory act, like the collection of tools needed to commit a crime, is not criminalized when the actor abandons his or her intent to commit the crime, even if the actor retains the tools needed for the crime. Without the abandonment defense, the substantial-step analysis would permit the criminalization of an act much farther removed from the commission of the actual crime than Vermont's law allows, and effectively criminalize intent uncoupled with action.

¶ 24.    Just as the defendant in Hurley did not commit an attempt to break out of jail based on the mere possession of the hacksaws to saw through the jail window bars, defendant in this case took no action so proximate to the commission of the school shooting as to constitute an attempt. Each of defendant's actions was a preparatory act, and not an act undertaken in the attempt to commit a crime. Therefore, as a matter of law, defendant's acts did not fall within the definition of an attempt. See Hurley, 79 Vt. at 31, 64 A. at 78 ("The preparation must be such as would be likely to end, if not extraneously interrupted, in the consummation of the crime intended."); see also Devoid, 2010 VT 86, ¶ 11 ("An overt act must advance beyond mere intent and reach far enough toward accomplishing the desired result to amount to the commencement of the consummation." (quotation omitted)); Curtis, 157 Vt. at 631, 603 A.2d at 357 ("[A]n attempt consists not only of an intent to commit a particular crime, but . . . some overt act designed to carry out such intent." (quotation omitted)); Boutin, 133 Vt. at 533, 346 A.2d at 532 (holding that "holding of a bottle in one hand ten feet from the intended victim does not make it likely to end in the consummation of the crime intended"). In other words, defendant undertook no act that was the "commencement of the consummation" of the crimes he is charged with here. Devoid, 2010 VT 86, ¶ 11.

¶ 25.    Under Vermont's law, as set forth in decisions of this Court, the State has not presented sufficient evidence to conclude that the "evidence of guilt is great" such that defendant may be presumed incarcerated rather than released prior to trial. Vt. Const. Ch. II, § 40; 13 V.S.A. § 7553.

¶ 26.    In closing, we note that the Judiciary's role is confined to the interpretation and application of the law as it currently stands. Beginning with Hurley over a century ago, this Court has consistently held that preparation alone does not satisfy the high bar required to prove an attempt. The Legislature is tasked with enacting such laws as the people of Vermont think necessary. This Court is bound to apply the law in agreement with statute and this Court's own earlier decisions. The Legislature can, if it chooses, deviate from this long-established standard by passing a law revising the definition of attempt.

Reversed and remanded for further proceedings consistent with this decision.

BY THE COURT:

Beth Robinson, Associate Justice

☒ Publish

☐ Do Not Publish

Harold E. Eaton, Jr., Associate Justice

Karen R. Carroll, Associate Justice