ENTRY ORDER

2020 VT 106

SUPREME COURT DOCKET NO. 2020-276

NOVEMBER TERM, 2020

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Addison Unit, |
| | } | Criminal Division |
| | } | |
| Jason Blow | } | DOCKET NO. 172-6-20 Ancr |

Trial Judge: Thomas Carlson

In the above-entitled cause, the Clerk will enter:

¶ 1.     Defendant Jason Blow appeals the superior court's denial of his motion to reconsider a hold-without-bail order issued under 13 V.S.A. § 7553.  He argues that evidence obtained after the decision to hold him without bail disproves complainant's allegations, warranting his release on bail pending trial.  We disagree and accordingly affirm.

¶ 2.     Defendant is charged with aggravated sexual assault in violation of 13 V.S.A. § 3253(a)(1) and second-degree unlawful restraint under 13 V.S.A. § 2406(a)(3).  The information alleges that on June 4, 2020, defendant locked complainant in his car and sexually assaulted her while causing serious bodily injury.  He faces the potential of life imprisonment under 13 V.S.A. § 3253(b) and as a habitual offender under 13 V.S.A. § 11.

¶ 3.     The State moved to hold defendant without bail under 13 V.S.A. § 7553, which authorizes the superior court to hold a defendant without bail when the defendant is "charged with an offense punishable by life imprisonment" and "the evidence of guilt is great."  The evidence of guilt is great if "substantial, admissible evidence, taken in the light most favorable to the State and excluding modifying evidence, can fairly and reasonably show defendant guilty beyond a reasonable doubt."  State v. Ford, 2015 VT 127, ¶ 10, 200 Vt. 650, 130 A.3d 862 (mem.) (quotation omitted).  If the State shoulders this burden, which it may do with affidavits, depositions, sworn oral testimony, or other admissible evidence, State v. Duff, 151 Vt. 433, 439, 563 A.2d 258, 262-63 (1989), a presumption against release arises, State v. Auclair, 2020 VT 26, ¶ 3, __ Vt. __, 229 A.3d 1019 (mem.).  The court must then exercise its discretion in determining whether to nevertheless impose bail and conditions of release.  Id.  In this latter determination, the court may look to the factors listed in 13 V.S.A. § 7554(b), and the burden is on the defendant to overcome the presumption against release.  Auclair, 2020 VT 26, ¶¶ 3, 6.  The factors include:

the nature and circumstances of the offense charged; the weight of the evidence against the accused; and the accused's family ties, employment, character and mental condition, length of residence in

the community, record of convictions, and record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings. Recent history of actual violence or threats of violence may be considered by the judicial officer as bearing on the character and mental condition of the accused.

13 V.S.A. § 7554(b)(2).

¶ 4. The superior court held a weight-of-the-evidence hearing, at which the State adduced the following evidence in the form of affidavits from complainant and investigating officers. Based on a prior agreement, on June 4, 2020, defendant picked up complainant from her foster home in Georgia, Vermont to drive her to Indiana. Complainant was seventeen years old at the time of these events. The two drove for some time before defendant stopped at a park-and-ride in Vergennes. There, he asked complainant to engage in sexual intercourse with him, which complainant declined. When defendant put his hand between her legs, complainant tried to exit the vehicle, but the passenger door would not open. She climbed over the center console to the rear of the car, where the doors were likewise locked. Defendant followed her there and, despite complainant's resistance, he held her down, wrapped his hands around her neck, removed her clothing, and inserted his penis into her vagina.

¶ 5. Thereafter, the two returned to the front seats and proceeded—ostensibly—to Indiana. After about twenty minutes, defendant allegedly received a text message informing him that a family member had been in a car accident and was being rushed to surgery. Defendant turned around and drove to Burlington, where he dropped complainant off near the University of Vermont Medical Center (UVMMC). Complainant then walked to a Colchester convenience store.

¶ 6. The next day, June 5, an officer who had been looking for complainant as a missing person found complainant and saw bruising around her neck and arms. The officer took photographs documenting the bruising. A subsequent inspection of defendant's vehicle revealed that tape was used to block the passenger window from opening. It was also determined that if a mechanism in the center panel of the dashboard is activated, the vehicle's doors do not open.

¶ 7. On June 19, multiple officers drove to defendant's home to arrest him in connection with these charges and other allegations of criminal conduct. They spotted defendant in his vehicle in the vicinity and attempted to execute a traffic stop. Defendant fled and led the officers on a high-speed pursuit through congested traffic, imperiling several pedestrians along the way. Officers lost sight of defendant for a time but later found his abandoned vehicle in nearby woods. They deployed a police canine that eventually tracked defendant fleeing on foot.

¶ 8. Based on this evidence, the superior court found great evidence of guilt under § 7553. The court then considered the § 7554(b) and other factors and declined to release defendant on bail. As relevant to the latter analysis, the court observed that defendant introduced evidence that he had lived in Vermont with his grandmother virtually his entire life. Defendant also elicited testimony from his employer that, if released, defendant would continue to work for him. The court nevertheless declined to impose bail, citing the serious and violent offenses charged, the strong weight of the State's evidence, and the consistency in and credibility of complainant's allegations. The court also noted defendant's status as a registered sex-offender with previous convictions, defendant's willingness to endanger the public and flee from police,

and the prospect of life imprisonment stemming from the present charges. The court thus ordered defendant held without bail.

¶ 9. Defendant moved for reconsideration, arguing that two new pieces of evidence he received from the State through discovery after the weight-of-the-evidence hearing rendered complainant's allegations impossible and that accordingly the weight of the evidence was no longer great under § 7553. First, text messages between complainant and defendant show that the last electronic communication between them on the morning of June 4 was at 1:04 a.m., from which an inference may be drawn that complainant was not picked up in Georgia until after that time. Second, an employee at the Colchester convenience store attested in a sworn statement that she saw complainant at that store at 4:25 a.m. that morning. Thus, defendant argued that complainant's allegations of the following could not have occurred in the three hours and twenty-one minutes between 1:04 and 4:25 a.m.: the drive from Georgia to Vergennes, the sexual assault, the drive away from Burlington for about twenty minutes, the drive from there to Burlington, complainant's drop off at UVMMC, and complainant's walk to the Colchester convenience store.

¶ 10. Defendant further argued that additional new evidence so weakened the State's case that the hold-without-bail order was no longer justified under the discretionary bail analysis. Defendant directed the superior court to a June 5 medical record in which complainant told a medical professional that she secured a ride to Burlington from a friend and, as she walked on Church Street, an unidentified man attempted to sexually assault her, contradicting her account of events to the police. He also pointed to a June 11 medical report that similarly references an attempted—not consummated—sexual assault. Finally, defendant averred that he received a recorded interview from the State in which complainant said that defendant would not have had reason to think that she was going to have sex with him on the day in question. That statement, defendant argued, is contradicted by text messages sent just prior to the Georgia pickup in which complainant agreed to have sex with defendant as payment for the ride to Indiana.

¶ 11. The superior court declined to alter its weight-of-the-evidence conclusion because it determined that the new time-constraint evidence was modifying evidence bearing on the complainant's credibility, which is excluded from the § 7553 analysis. See Ford, 2015 VT 127, ¶ 10. The court reviewed the evidence bearing on its discretionary decision to release defendant on bail and declined to impose bail, citing, among other factors, the seriousness of the offenses, defendant's criminal history, the potential life sentence defendant faces, and defendant's flight from the police.

¶ 12. On appeal, defendant renews his argument that the new time-constraint evidence discredits complainant's allegations, such that the evidence of guilt is no longer great under § 7553. He also argues that all the new evidence significantly weakens the State's case, something the trial court should have considered in determining his risk of flight under the discretionary bail analysis.

¶ 13. This Court assesses whether the § 7553 standard is met based on the record below, but without deference to the superior court. State v. Sawyer, 2018 VT 43, ¶ 4, 207 Vt. 636, 187 A.3d 377 (mem.). Our review of the court's denial of discretionary bail is for abuse of discretion. State v. Orost, 2017 VT 110, ¶ 6, 206 Vt. 657, 179 A.3d 763 (mem.). Though the court's discretion is broad, the bail decision cannot be arbitrary. Auclair, 2020 VT 26, ¶ 6.

¶ 14. We agree with the superior court that the new time-constraint evidence is modifying evidence excluded from the § 7553 analysis. We further hold that the evidence of guilt is great in

this case and that defendant could therefore be held without bail. Finally, we find no abuse of discretion in the court's discretionary bail decision.

¶ 15. As noted, the evidence of guilt is great under § 7553 if "substantial, admissible evidence, taken in the light most favorable to the State and excluding modifying evidence, can fairly and reasonably show defendant guilty beyond a reasonable doubt." Ford, 2015 VT 127, ¶ 10 (quotation omitted). Modifying evidence is excluded from the § 7553 analysis "to avoid judicial decisions on credibility at bail hearings." State v. Breer, 2016 VT 120, ¶ 11, 203 Vt. 649, 160 A.3d 318 (mem.); see also State v. Turnbaugh, 174 Vt. 532, 534, 811 A.2d 662, 665 (2002) (mem.) (noting that "[d]irect conflicts between inculpatory or exculpatory facts cannot be resolved at this stage" and that "[s]uch matters must await jury determination at trial").

¶ 16. We have defined modifying evidence as "testimonial evidence introduced by the defense in contravention to the State's evidence, the credibility or weight of which is ultimately for the factfinder's determination." State v. Stolte, 2012 VT 12, ¶ 11, 191 Vt. 600, 44 A.3d 166 (mem.). But modifying evidence may also be "nontestimonial evidence"—that which "does not derive and depend on the observation, recollection, reliability, or veracity of witnesses, whether in the form of live testimony or a sworn statement." Id. ¶ 13. Nontestimonial evidence includes DNA analysis, photographs, or other physical evidence. Id. Whether nontestimonial evidence constitutes modifying evidence depends on whether its validity is disputed: Where the validity of nontestimonial evidence is not disputed, such as with an indisputably valid DNA result, the evidence is not modifying evidence and may be considered in a § 7553 analysis. See id. ¶¶ 13-15. In contrast, where the validity of the evidence is at issue, such as when a photograph may have been doctored, the evidence is modifying evidence "because it raises a factual question . . . that must be left for the jury at trial." Id. ¶ 14. Thus, "the true inquiry is whether the . . . evidence raises a factual dispute more appropriate for the jury to determine." Breer, 2016 VT 120, ¶ 11.

¶ 17. Here, the time-constraint evidence was rightly excluded from the § 7553 analysis for two reasons. First, assuming the text messages placing complainant in Georgia at 1:04 a.m. constitute nontestimonial, non-modifying evidence, defendant's other bookend—the evidence that puts complainant in Colchester at 4:25 a.m.—is testimonial evidence. That evidence is the sworn statement of a witness who attests that she saw complainant in the convenience store at 4:25. The observation, recollection, reliability, and veracity of this witness are all ultimately for the factfinder's determination. As such, it is classic modifying evidence adduced to contravene the State's evidence and is thus excluded from the § 7553 analysis.[1] Second, even accepting defendant's start and stop times, the evidence does nothing more than undermine complainant's credibility—precisely the type of inquiry removed from judicial determination at the bail stage of criminal proceedings. See Turnbaugh, 174 Vt. at 534, 811 A.2d at 665 (noting that asking court to make credibility determinations at this stage "would treat a bail hearing as if it were an adjudication of the merits of the case, which it is not"). Defendant's theory that the evidence makes complainant's allegations impossible depends on conjecture about the routes defendant chose, the speeds at which defendant drove, how long the alleged sexual assault took, and how fast complainant walked. The evidence raises genuine questions about complainant's allegations, but

---

[1] In his argument to the trial court, and in briefing before this Court, defendant noted that there is a surveillance image of complainant at the Colchester convenience store. However, by defendant's own account, that image was captured at 6:23 a.m. on June 4. Defendant's time-constraint argument is based, not on the image captured at 6:23 a.m., but on the sworn statement of the employee stating that complainant was at the store at 4:25 a.m.

4

it does not exonerate defendant.  See Breer, 2016 VT 120, ¶ 13 (excluding similar time-location evidence where theory that it undermined State's case depended on multiple inferences).

¶ 18.    Excluding modifying evidence and taking the State's evidence in the light most favorable to it, the State marshalled substantial, admissible evidence that can fairly and reasonably prove defendant's guilt beyond a reasonable doubt.  Complainant's affidavits describe defendant holding her down as she resisted, wrapping his hands around her neck, removing her clothing, and inserting his penis into her vagina.  See 13 V.S.A. §§ 3253(a)(1); 3252(a)(1); 3251(1), (4); 1021(2)(B) (describing offense of aggravated sexual assault as nonconsensual penis-to-vulva contact while causing serious bodily injury, which includes strangulation).  A police officer attested that she saw bruising on complainant's neck and arms the day after the alleged incident and photographs in the record depict the bruising.  Complainant described trying to exit the vehicle repeatedly but being unable to because the front passenger door and rear doors were locked.  See id. § 2406(a)(3) (describing offense of second-degree unlawful restraint as knowing restraint of person).  A police affidavit documents that tape was used to block the passenger window of defendant's vehicle from opening and that unless a mechanism in the center of the dashboard is activated, the vehicle's doors do not open.  The State met its burden to prove that the evidence of guilt is great under § 7553.  Accordingly, defendant could be held without bail, a presumption against release arose, and the burden shifted to defendant to persuade the court to exercise its discretion to set bail or conditions of release.  Auclair, 2020 VT 26, ¶ 16.

¶ 19.    Regarding the discretionary bail decision, defendant argues that all the new pieces of evidence—the time-constraint evidence, the medical reports, the recorded interview, and the sexually charged text messages—erode complainant's credibility.  This, he continues, weakens the State's case, a fact the superior court should have considered in determining his risk of flight to avoid prosecution, which is one of the factors in § 7554(b).  Defendant observes that when the State's case is weak, a defendant may be less likely to evade prosecution, thus supporting a release on bail.

¶ 20.    Defendant finds some support in the fact that one of the factors the court may consider in the discretionary bail determination is "the weight of the evidence against the accused," 13 V.S.A. § 7554(b)(2), which can refer to "the relative strength of the State's case against the defendant," Auclair, 2020 VT 26, ¶ 18.  It is also true that in the discretionary bail determination, unlike in the § 7553 analysis, the court can consider the credibility of the State's witnesses and modifying evidence.  Id.  But the court is not required to consider all the factors listed in § 7554(b) when exercising its broad discretion to impose bail or conditions of release, though that may be best practice.  Id. ¶ 21; see also State v. Henault, 2017 VT 19, ¶ 8, 204 Vt. 628, 167 A.3d 892 (mem.) (holding that "trial court may look at the § 7554(b) factors when deciding whether to grant a defendant bail" but that consideration of each factor is not required); Ford, 2015 VT 127, ¶ 11 ("[T]here is no requirement that a court consider all of the factors listed in § 7554 when exercising its discretion.").  Accordingly, the court here did not have to consider the risk-of-flight factor at all, much less the effect of a weakened State's case on that factor.

¶ 21.    The record indicates that the court exercised its discretion and considered several of the § 7554(b) factors, as well as other factors.  For example, the court considered the nature and circumstances of the offenses charged, noting the violent nature of the alleged sexual assault directed against a minor.  It considered defendant's record of convictions, which includes several felony and misdemeanor convictions, and his status as a registered sex offender.  The court considered evidence of flight to avoid prosecution, specifically, evidence that defendant fled from

5

the police, first at high speed in his vehicle and then on foot, putting the public at risk.[2]  And it observed that defendant faces the possibility of life imprisonment for the charged offenses. Against these factors, the court noted that there are indeed "significant questions about the credibility of the victim and the timeframe of events alleged."  It considered defendant's evidence that he has lived and worked in the community all his life.  The court even considered defendant's suggestion of imposing a curfew at his grandmother's home and a daily check-in at the Colchester Police Department.  But it ultimately determined that these conditions would not mitigate defendant's risk of flight or danger to the public.  Weighing these considerations, the court exercised its discretion and declined to impose bail.  There was no abuse of discretion.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

☒ Publish

_____
Karen R. Carroll, Associate Justice

☐ Do Not Publish

_____
William D. Cohen, Associate Justice

---

[2] In his brief, defendant cites State v. Welch for the proposition that evidence of flight is "consistent with innocent behavior, such as fear, panic, unwillingness to confront the police, and reluctance to appear as a witness."  2020 VT 74, ¶ 16, __ Vt. __, __A.3d __.  The applicability of Welch and like cases to bail proceedings was not briefed and we accordingly express no opinion on the subject.  But we do observe that the Welch line of cases concerns evidence of flight as consciousness of guilt, not evidence of flight as relevant to a court's decision to impose bail or conditions of release.  See, e.g., id. ¶ 1; State v. Scales, 2017 VT 6, ¶ 4, 204 Vt. 137, 164 A.3d 652.