**ENTRY ORDER**

2022 VT 38

SUPREME COURT DOCKET NO. 22-AP-173

AUGUST TERM, 2022

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Chittenden Unit, |
| | } | Criminal Division |
| | } | |
| Hieheem Kirkland | } | Case No. 21-CR-09460 |
| | } | |
| | | Trial Judge: A. Gregory Rainville |

In the above-entitled cause, the Clerk will enter:

¶ 1.     Defendant appeals the trial court's order holding him without bail pending trial pursuant to 13 V.S.A. § 7553, arguing that the State's evidence of his guilt is not great.  We affirm.

¶ 2.     Defendant is charged with attempted first-degree murder, in violation of 13 V.S.A. § 2301, and prohibited possession of a firearm as a person convicted of a violent crime, in violation of 13 V.S.A. § 4017(a).  Attempted first-degree murder is a crime punishable by life imprisonment. 13 V.S.A. §§ 9(a), 2303(a)(1).

¶ 3.     The State moved to hold defendant without bail,[1] and the court held hearings to consider the weight of the evidence on December 22, 2021, and March 3, 2022.[2]  The following evidence was presented at the hearings.

¶ 4.     On November 1, 2021, the South Burlington Police Department received two reports of shots fired around the University Mall at approximately 1:00 p.m.  When officers arrived at the scene, they spoke to a witness who provided a sworn audio statement, during which she stated that she witnessed a man fire a handgun at another person near the parking garage at the northwest corner of the University Mall parking lot.  She said that she was driving past the parking area when she saw a six-foot-tall Black man take a handgun out of his vest pocket and shoot at a shorter Black man.  She indicated that she heard three gunshots.  A second witness contacted the police at a later time and informed them that she heard three gunshots while parked nearby with her car windows rolled down.  Officers found three Tulammo-brand shell casings in the northwest corner of the University Mall parking lot.

¶ 5.     While the officers were at the University Mall, complainant went to the South Burlington Police Department, indicated he was the target of the shooting, and provided a sworn

---

[1]  In its motion to hold defendant without bail, the State cited to 13 V.S.A. § 7553a; however, the trial court's decision relied on 13 V.S.A. § 7553.

[2]  After the first hearing concluded, the State submitted a supplemental affidavit containing further evidence identifying the shooter, so the court scheduled the second hearing to provide defendant with an opportunity to cross-examine.

statement that included the following. He went to the University Mall to meet with defendant's girlfriend to sell her drugs. When he arrived, he saw a red car with tinted windows that defendant's girlfriend usually drives. As he approached the car, he saw a man he knew as "Shiesty R. Kirkland" shoot at him an estimated five times. He had seen this person in the past and knew this person to be dating the woman he arranged to meet. The shooter was wearing black clothing and a ski mask and carrying a handgun, and fled the parking lot in the red car with tinted windows in the direction of Burlington International Airport. In addition to these statements, complainant showed officers a Facebook Messenger conversation, in which he arranged to meet an individual claiming to be defendant's girlfriend at the northwest corner of the University Mall parking lot. Complainant believed that defendant attempted to lure him to the parking lot with the intent to shoot him because defendant was jealous of complainant's previous meet-up with defendant's girlfriend.

¶ 6. Officers identified "Shiesty R. Kirkland" as defendant using photographs, Facebook pages, and criminal-history records. They also learned that a red Toyota, which was registered to defendant's girlfriend's parents and matched complainant's description of the car he saw, had been towed from the Burlington airport shortly after the shooting. Upon searching the car, they found a Nike fanny pack containing a loaded nine-millimeter handgun and Tulammo ammunition. They also obtained surveillance video from a gas station recorded the morning of the shooting that showed defendant wearing a similar Nike fanny pack. When they arrested defendant at a residential address, the owner of the residence told officers that defendant had been driving a red Toyota with tinted windows that belonged to defendant's girlfriend. The owner said she knew defendant had recently left the car at the airport because she overheard defendant and his girlfriend arguing about it. They searched defendant's residence pursuant to a warrant and found a box of nine-millimeter Tulammo ammunition with five rounds missing in a lock box containing multiple items with defendant's and his girlfriend's names on them.

¶ 7. On March 8, the trial court granted the State's motion to hold defendant without bail pursuant to 13 V.S.A. § 7553. It concluded that the evidence of guilt was great because the admissible evidence, viewed in the light most favorable to the State, could fairly and reasonably convince a jury beyond a reasonable doubt that defendant is guilty of attempted first-degree murder. Then, the court considered the factors laid out in 13 V.S.A. § 7554(b) and determined that no condition or set of conditions could reasonably protect the public from the danger defendant poses or mitigate the risk of defendant's flight.

¶ 8. On appeal, defendant argues the State has not shown that the evidence of guilt is great because the record is insufficient to identify defendant as the shooter. He points to two of the trial court's findings that he proposes are not supported by the evidence presented: that defendant represented himself to be his girlfriend on Facebook Messenger and that the firearm found in the car matched the description of the one used by the shooter. Defendant does not challenge the court's refusal to impose bail or grant discretionary release under conditions and thus our review of the trial court's order will be limited to these issues.

¶ 9. Under 13 V.S.A. § 7553, a person may be held without bail if they are "charged with an offense punishable by life imprisonment" and "the evidence of guilt is great." If these requirements are satisfied, "a presumption against release arises"; nevertheless, the trial court must exercise its discretion to determine whether to impose bail and conditions of release. State v. Blow, 2020 VT 106, ¶ 3, 213 Vt. 651, 251 A.3d 517 (mem.). In making this determination, the trial court "may look to the factors in 13 V.S.A. § 7554(b) to assess whether conditions of release can be imposed that mitigate the risk of flight and ensure the safety of the public." State v. Waterman, 2022 VT 1, ¶ 20, __ Vt. __, 273 A.3d 634 (mem.).

¶ 10.    The sole issue on appeal is whether the evidence of defendant's guilt is great.  On appeal, we "independently determine[]" whether this standard has been satisfied.[3] State v. Orost, 2017 VT 110, ¶ 5, 206 Vt. 657, 179 A.3d 763 (mem.).  The evidence of guilt is great when "substantial, admissible evidence, taken in the light most favorable to the State and excluding modifying evidence, can fairly and reasonably show defendant guilty beyond a reasonable doubt." State v. Avgoustov, 2006 VT 90, ¶ 2, 180 Vt. 595, 907 A.2d 1185 (mem.).  The State may meet its burden with "affidavits, depositions, sworn oral testimony, or other admissible evidence." State v. Duff, 151 Vt. 433, 439-40, 563 A.2d 258, 263 (1989) (adopting standard in Vermont Rule of Criminal Procedure 12(d) to weigh evidence of guilt under § 7553).  Modifying evidence to be excluded includes "testimonial evidence introduced by the defense in contravention to the State's evidence, the credibility or weight of which is ultimately for the factfinder's determination" and certain types of "nontestimonial evidence," the validity of which is subject to dispute such that it "raises a factual question . . . that must be left for the jury at trial." State v. Stolte, 2012 VT 12, ¶¶ 11, 14, 191 Vt. 600, 44 A.3d 166 (mem.).

¶ 11.    The admissible evidence presented below, excluding any modifying evidence, is sufficient to convince a factfinder beyond a reasonable doubt that defendant was the shooter.  First, the State has an eyewitness identification of defendant as the shooter in complainant's sworn statement.  Although defendant argues that complainant's identification lacks distinctive or specific reasons to support its veracity, these arguments go to complainant's credibility and are not properly considered at this type of proceeding.  See State v. Breer, 2016 VT 120, ¶ 11, 203 Vt. 649, 160 A.3d 318 (mem.) (stating modifying evidence is excluded "to avoid judicial decisions on credibility at bail hearings").  Moreover, the extent to which the shooter's mask might have obscured complainant's ability to see and identify defendant is modifying evidence that we cannot consider.  See State v. Turnbaugh, 174 Vt. 532, 534, 811 A.2d 662, 665 (2002) (mem.) ("Direct conflicts between inculpatory or exculpatory facts cannot be resolved at this stage.  Such matters must await jury determination at trial.").  Contrary to defendant's arguments, complainant's identification is not devoid of support—he alleged he knew the shooter to be defendant because he had seen defendant in the past and the shooter matched what he knew defendant to look like.  Complainant also stated that he arranged via Facebook Messenger to meet with defendant's girlfriend at the northwest corner of the University Mall parking lot.  When complainant arrived, he saw defendant's girlfriend's car but did not see her.  Instead, he saw a person shooting at him that looked like defendant.  These additional observations regarding the buildup to the shooting support the identification.

¶ 12.    The State also presented circumstantial evidence that a factfinder could use to conclude that defendant was the shooter.  See State v. Martin, 2007 VT 96, ¶ 8, 182 Vt. 377, 944 A.2d 867 ("While evidence that leaves the determination of a disputed fact wholly dependent on conjecture or mere suspicion is insufficient, circumstantial evidence may serve as proof of a fact beyond a reasonable doubt.").  Complainant said he saw a red car with tinted windows that belonged to defendant's girlfriend in the parking lot and that the shooter drove it in the direction of the Burlington airport.  Law enforcement searched a red car with tinted windows registered to defendant's girlfriend's parents that had been towed from the airport and found a nine-millimeter handgun as well as nine-millimeter Tulammo ammunition.  The car also contained a Nike fanny

---

[3] In assessing the weight of the evidence, we independently apply the standard set out in Vermont Rule of Criminal Procedure 12(d); therefore, we need not limit our review to the findings set out by the trial court in its order.  See State v. Hardy, 2008 VT 119, ¶ 11, 184 Vt. 618, 965 A.2d 478 (mem.) ("The question is not how the trial court reached a particular decision about the weight of the evidence but instead whether admissible, substantial evidence objectively supports a finding of guilt beyond a reasonable doubt.").

3

pack matching one seen on defendant's person in a video recorded the day of the shooting. An eyewitness described the shooter's weapon as a handgun. Three nine-millimeter Tulammo shell casings were found by police in the University Mall parking lot near where the shooting occurred. Further, officers found more nine-millimeter Tulammo ammunition in defendant's residence in a box with other items labeled with defendant's name. In summary, the car, the handgun, the ammunition, and the Nike fanny pack can all be used to draw an inference that defendant was the shooter. See State v. Durenleau, 163 Vt. 8, 12, 652 A.2d 981, 983 (1994) ("In assessing circumstantial evidence, the fact-finder may draw rational inferences to determine whether disputed ultimate facts occurred.").

¶ 13. Defendant takes issue with two specific findings made by the trial court in its decision: that defendant represented himself to be his girlfriend in the Facebook messages and that the handgun found in the car matched the description of the one used in the shooting.[4] We conclude these findings are based on inferences permissibly and reasonably drawn from the evidence presented. In complainant's statement and Facebook messages, there is evidence that complainant was messaging someone he thought to be defendant's girlfriend, he arranged with that person to meet at the parking lot, defendant's girlfriend did not show up, and someone else showed up that looked like defendant and began shooting at complainant. A factfinder could conclude that the shooter posed as defendant's girlfriend to lure complainant to the location of the shooting based on these facts. Moving on to the second disputed finding, an eyewitness stated that a handgun was used in the shooting, and nine-millimeter Tulammo ammunition was found at the scene. In the red car, law enforcement found a handgun containing nine-millimeter Tulammo ammunition. This is sufficient to link the type of weapon used at the shooting to the type of weapon found in the car. It is inconsequential that the trial court described this inferential link as the two guns matching in "description" when the handgun seen by the live witness had no identifying characteristics; the essence of the finding is that the handgun in the car could have been used by the shooter. See Ackerman v. Kogut, 117 Vt. 40, 46, 84 A.2d 131, 135 (1951) (explaining that we will not reverse over "choice of words when the substance is the same").

Affirmed.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice

_____
Karen R. Carroll, Associate Justice

_____
William D. Cohen, Associate Justice

---

[4] Although the trial court's findings are not directly relevant to our decision, see supra, ¶ 10 n.3, we address these arguments because they go to whether the evidence provided below is sufficient to support certain findings that a factfinder at the trial stage would need to make to return a guilty verdict.